384 So.2d 272 (1980)
Bernard KEARSE, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1392.
District Court of Appeal of Florida, Fourth District.
June 11, 1980.
*273 Richard L. Jorandby, Public Defender, and Paul M. Herman, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Appellant appeals the trial court's denial of a motion to suppress as evidence the narcotic paraphernalia which he was charged with unlawfully possessing. At issue is the validity of the stop and subsequent frisk, which led to appellant's arrest. We hold that there were insufficient facts to constitute a "founded suspicion" on which to justify the stop. We reverse.
At 4:00 p.m. on January 12, 1978, two Broward County Deputy Sheriffs were on routine patrol in their police car on Northwest 27th Avenue near Fort Lauderdale. The deputies observed appellant leaning into the passenger window of a vehicle which was parked in a service station parking lot and occupied by several persons. After observing the deputies as they approached, appellant walked "briskly" away from the deputies' vehicle. As appellant continued to walk down the sidewalk, the deputies exited their vehicle and ordered appellant to halt. The deputies directed appellant to turn around and place his hands on a store wall preparatory to being frisked for weapons. When appellant outstretched his arms, the deputies saw a hypodermic plunger protruding from his rear pocket and seized the evidence.
The trial court made specific findings and conclusions based upon the deputies' testimony. Deputy McCann testified that he had known appellant for two years, and that while he had never observed appellant involved in criminal activity, he was aware of such involvement from other sources. The officers testified that appellant's conduct of hurriedly walking away was out of character since appellant would normally acknowledge the deputies when he saw them. Although the deputies were unable to articulate what type of criminal activity they suspected was occurring, they became "suspicious" because of appellant's inconsistent behavior on the day in question.
The trial court, in concluding that the stop was lawful, relied upon our decision in State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978):
... There will be borderline cases, of course, in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain factors might then be evaluated to determine whether they reasonably suggested the suspect's possible commission, existing or imminent, of a crime: the time, the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge. (Emphasis supplied).
In upholding the search, the trial court held that appellant's behavior and unusual actions in light of the deputies' knowledge was the legitimate basis for a "founded suspicion," and that the seizure was the result of the syringe being in open view. The court may also have considered the testimony that the area had an incidence of crime and that one of the deputies had observed "thousands" of drug situations "with an m.o. where people lean into a car."
In our opinion, the totality of the circumstances were insufficient to justify a reasonable conclusion that appellant was involved in any criminal activity and therefore the investigatory stop was improper. To justify temporary detention of a person, a "founded" suspicion in the mind of the *274 determining officer that the person has committed, is committing, or is about to commit a crime is required. A "bare" suspicion, on the other hand, cannot support detention. State v. Stevens, supra at 1247.
The "suspicion" that the officers acted upon was based on appellant's behavior in avoiding the officers and walking away from them upon their approach. This alone was not enough to constitute a "founded suspicion," especially since the officers conceded that they were not quite sure what appellant had done or what he was doing, but that his actions seemed suspicious in light of the officers' previous contacts with appellant.
Although leaning into a car is typical of a drug purchase situation "m.o.," the deputies testified that there was nothing inherently suspicious nor did the deputies observe anything unusual going on in the vehicle which appellant was seen leaning into.
The circumstances in this case  that is, the appellant walking briskly away from a parked vehicle after observing the police  were insufficient to justify appellant's detention.
In reversing the trial court's denial of the motion to suppress, we rely upon the language provided in Jackson v. State, 319 So.2d 617, 619 (Fla. 1st DCA 1975):
... A ruling otherwise would mean that any citizen who terminated a conversation with another on a public sidewalk at the time a police officer happened to be approaching and who then walked briskly in the opposite direction from the approach of the police officer, would be subject to detention... .
See also, Lower v. State, 348 So.2d 410 (Fla. 2d DCA 1977).
Although our decision upon the stop is dispositive, we consider it appropriate to discuss the fact that appellant was ordered to turn around and put his hands on the store wall, preparatory to a pat-down search for weapons. Section 901.151(5), Florida Statutes (1977), permits a limited search only when a law enforcement officer "has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon." In the present case, there is nothing in the record to suggest appellant was armed with a dangerous weapon. It was therefore improper to require appellant to put his hands on the wall to be searched, regardless of any question involving the stop.
Based on the foregoing, the physical evidence was unlawfully seized as the result of an improper exercise of police power. Accordingly, the judgment and sentence are reversed with directions that the trial court enter an order suppressing the evidence seized from appellant.
REVERSED and REMANDED, with directions.
LETTS, C.J., and MOORE, J., concur.